2016 UT App 34

## THE UTAH COURT OF APPEALS

MICHAEL S. ROBINSON,
Appellant,
*v.*
JONES WALDO HOLBROOK & MCDONOUGH, PC;
STEPHEN C. CLARK; AND MELISSA M. BEAN,
Appellees.

Opinion
No. 20140213-CA
Filed February 19, 2016

Third District Court, West Jordan Department
The Honorable Charlene Barlow
No. 110415662

Michael S. Robinson, Appellant Pro Se

Keith A. Call, Rodney R. Parker, and Robert W. Lin,
Attorneys for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and STEPHEN L. ROTH
concurred.

CHRISTIANSEN, Judge:

¶1 Michael S. Robinson appeals from the denial of his motion for a continuance and the grant of summary judgment in favor of Jones Waldo Holbrook & McDonough, PC; Stephen C. Clark; and Melissa M. Bean (collectively, Defendants). We affirm.

### BACKGROUND

¶2 In February 2007, Robinson retained Defendants to represent him in a divorce action involving extensive marital property, including a commercial complex located in St. George,

Utah, named Phoenix Plaza. On November 2, 2007, Robinson and his then-wife agreed to a division of their interests (the Stipulation). As part of the Stipulation, Robinson agreed to file an application to refinance Phoenix Plaza, which he never did. *See generally Robinson v. Robinson*, 2010 UT App 96, 232 P.3d 1081 (affirming the denial of Robinson's motion to set aside the Stipulation); *Robinson v. Robinson*, 2016 UT App 32, (affirming, among other things, a judgment of contempt for Robinson's failure to comply with the divorce decree entered into pursuant to the Stipulation); *Robinson v. Robinson*, 2016 UT App 33, (affirming, among other things, a motion to dismiss and a motion for summary judgment, both predicated on Robinson's failure to adequately plead fraud-based claims relating to the Stipulation).

¶3    On October 31, 2011, Robinson brought this suit against Defendants, alleging that they had committed legal malpractice in their representation of Robinson during the divorce proceedings. Robinson alleged that Defendants should have advised him to include language in the Stipulation governing what would happen if Robinson was unable to refinance Phoenix Plaza. Although initially unrepresented in his malpractice case, Robinson later retained counsel. Defendants and Robinson, through his counsel, entered into a scheduling order on January 2, 2013, governing discovery due dates. As relevant here, the scheduling order required Robinson to designate any experts by July 26, 2013. The order also required the parties to complete expert discovery by October 30, 2013, and to file all dispositive motions by November 15, 2013.

¶4    The parties complied with those due dates until April 8, 2013, when Robinson's counsel withdrew. After Defendants served a notice to appear or appoint counsel pursuant to rule 74(c) of the Utah Rules of Civil Procedure, Robinson sought new representation. According to Robinson, because he did not want to "shop" the case, and because he was seeking representation

on a contingency-fee basis, this process was lengthy. Defendants filed a motion for summary judgment on July 29, 2013, and Robinson retained new counsel on Monday, August 12, 2013. Robinson's new counsel did not begin working on the case until Thursday, August 15, 2013, quickly discovering that a response to the motion for summary judgment was due that very day.[1]

¶5     On Friday, August 16, 2013, Robinson's new counsel emailed Defendants' counsel twice. In the first email, counsel stated, "I will be filing a request for extension of time to respond to your motion today[.] If you would like to discuss this matter today, please feel free to contact me[.]" In the second email, counsel stated, "It may be that I will ask for more time . . . given the several hundred pages you have filed and my still nascent familiarity with the facts. But it is too soon to do more than briefly speculate on that supposition. Please advise." Defendants' counsel did not respond to these emails.

¶6     Also on August 16, 2013, Robinson's new counsel filed with the court a motion for extension of time to respond to summary judgment, pursuant to rule 56(f) of the Utah Rules of Civil Procedure.[2] Rule 56(f) provided that a district court may order a continuance to "permit affidavits to be obtained or depositions to be taken or discovery to be had" when "it appear[s] from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Robinson argued that, due to his lack of representation, he had been "unable to finish

---

1. Robinson averred that he had been unaware that a motion for summary judgment had been filed until his counsel discovered the pending motion in the docket on August 12, 2013.

2. This rule was renumbered as rule 56(d) of the Utah Rules of Civil Procedure, which became effective November 11, 2015. *See* 2015 Utah Court Order 0017.

discovery nor conduct absolutely necessary depositions." He therefore requested "that discovery be reopened and the discovery schedule be amended to allow him a few months to finish discovery and conduct depositions now that he has finally been able to obtain representation."

¶7   On August 30, 2013, Defendants filed an opposition to Robinson's rule 56(f) motion, arguing that the motion did not describe "what additional evidence is needed, what [Robinson's] opposition theory may be, what additional discovery is needed, or how long it may take." Robinson then filed a supplemental memorandum on September 9, 2013, explaining that he wanted to depose defendants Melissa M. Bean and Stephen C. Clark, and that he had "retained an expert, Orson West Esq., and assume[d] that Defendants would like to depose him as well." Robinson's new counsel also clarified that he was requesting two months of additional discovery time.

¶8   On February 12, 2014, the district court issued a ruling denying Robinson's rule 56(f) motion. The district court noted that Robinson had not designated his expert witnesses by July 26, 2013, and that Robinson's original counsel had withdrawn in April 2013. The court therefore concluded that Robinson "had over three months to retain new counsel and either comply with the discovery plan and scheduling order or to seek to amend the plan." It also noted that Defendants had not filed their motion for summary judgment until "[t]hree months and 21 days after [Robinson's] counsel withdrew and three days after the deadline to designate expert witnesses elapsed." The court ruled that Robinson "did not present a sufficient basis to excuse his lack of diligence in completing discovery."

¶9   The court's order also granted Defendants' motion for summary judgment. The court explained that, based in part on the rule 56(f) ruling, Robinson had not "filed any affidavits or

other evidence which raise an issue of disputed material fact to survive a motion for summary judgment." The court noted:

> Without an expert witness, [Robinson] cannot demonstrate that [Defendants'] representation of him in his divorce action fell below the applicable standard of care. Additionally, the affidavits, emails, and other evidence presented by [Defendants] in support of their motion demonstrate that [Robinson] cannot show that any alleged breach by [Defendants] caused any loss to him. [Robinson] entered into a stipulation to resolve his divorce after long negotiations between him and his ex-wife personally. He accepted and used the accounting figures given him by his ex-wife after consultation with his accountant. He clearly wanted to retain ownership of the Phoenix Plaza and accepted the stipulation arrived at on Friday November 2, 2007[.]
>
> . . . .
>
> Defendants' emails to [Robinson] continually reminded him of his obligation [under the Stipulation] to refinance the Plaza within 15 days but also show that he continually put off that obligation hoping to get a better interest rate . . . . Based upon his failure to even attempt to comply with the stipulation, this Court and other courts have ruled against him in other cases. [Robinson] cannot show that any actions by [Defendants] have caused the financial losses he is facing. As other courts have held, his failure to even attempt to comply with the stipulation [has] been the cause of his losses.

Robinson appeals.

ISSUES AND STANDARDS OF REVIEW

¶10    Robinson challenges the district court's denial of his rule 56(f) motion. We review the denial of a rule 56(f) motion for an abuse of discretion. *Energy Mgmt. Servs., LLC v. Shaw*, 2005 UT App 90, ¶ 8, 110 P.3d 158.

¶11    Robinson also challenges the district court's grant of Defendants' motion for summary judgment. We review a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness, after viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

ANALYSIS

I. The District Court Did Not Abuse Its Discretion by Denying Robinson's Rule 56(f) Motion.

¶12    Robinson contends the district court abused its discretion by denying his rule 56(f) motion. Robinson notes, "Rule 56(f) motions opposing a summary judgment motion on the ground that discovery has not been completed should be granted liberally unless they are deemed dilatory or lacking in merit." *Energy Mgmt. Servs., LLC v. Shaw*, 2005 UT App 90, ¶ 10, 110 P.3d 158 (citation and internal quotation marks omitted). He further notes that "[o]n occasion, justice and fairness will require that a court allow a party to designate witnesses, conduct discovery, or otherwise perform tasks covered by a scheduling order after the court-imposed deadline for doing so has expired." *Welsh v. Hospital Corp. of Utah*, 2010 UT App 171, ¶ 10, 235 P.3d 791 (citation and internal quotation marks omitted).

¶13    Robinson argues that "[a]pplying these principles to this case shows that the lower court clearly abused its discretion in

not granting Robinson the reasonable and modest extra time he sought." But the cases cited by Robinson do not clearly support his position.

¶14   In *Shaw*, this court held that the district court had committed error by failing to rule on a rule 56(f) motion at all. *Shaw*, 2005 UT App 90, ¶¶ 8, 15. In contrast, here, the district court did rule on Robinson's rule 56(f) motion. Accordingly, *Shaw* sheds little to no light on the question of whether the district court here abused the discretion afforded to it in deciding whether to grant Robinson's rule 56(f) motion.

¶15   *Welsh* concerned the district court's discretion to deny a motion seeking an extension to a deadline for expert witness designation and expert report submission. *Welsh*, 2010 UT App 171, ¶ 1. In that case, the district court denied the motion, which had been submitted shortly before the relevant deadline by the plaintiffs' newly retained counsel. *Id.* ¶¶ 4, 8. The court also barred the use of late-filed expert discovery materials at trial as a sanction for missing the deadline. *Id.* ¶ 8. This court held that the district court had abused its discretion in excluding the plaintiffs' experts from trial. *Id.* ¶ 19. In doing so, this court considered a number of factors, including (1) that the plaintiffs' counsel had only entered an appearance days before the expert witness deadline, (2) that the plaintiffs' motion seeking an extension was filed before that deadline, (3) that the defendant had previously been uncooperative in discovery, (4) that the defendant had also previously requested extensions to the discovery order, (5) that the plaintiffs had not sought to extend the deadlines for the completion of expert discovery or the certification of trial readiness, (6) that the plaintiffs had submitted their expert designations and expert reports before the district court actually denied their motion to extend the deadline such that granting the motion would not have caused any additional delay, (7) that the defendant did not claim that granting the motion would result in prejudice, and (8) that the

court clerk had notified the plaintiffs that their motion had been granted three weeks before the district court denied it. *See id.* ¶¶ 13–19.

¶16 The case before us is, admittedly, similar at first blush. Robinson's counsel did not enter an appearance until shortly before the deadline to respond to Defendants' motion for summary judgment. And Robinson did not seek to extend the deadlines for the completion of expert discovery. But the similarities end there. Here, Robinson did not move to extend the July 26, 2013 deadline for the designation of expert witnesses *before* the deadline passed.[3] In fact, it does not appear that Robinson filed any motion seeking to amend the scheduling order. Instead, Robinson moved to extend the deadline for his response to the summary judgment motion (which itself was based on Robinson's failure to comply with the scheduling order). In contrast to the *Welsh* plaintiffs, Robinson did not allege that Defendants' actions had been partly responsible for his

---

3. Robinson asserts that "[w]hen his counsel withdrew, [he] immediately sought accommodation from Defendants' counsel to set back the scheduled dates." Robinson does not point to any evidence to support this claim, nor do his affidavits shed light on it. In any event, Robinson admits that "he failed to file a request for extension with the court, in part, because he did not know how long it would take to obtain new counsel." While we grant pro se litigants every consideration that may reasonably be indulged, a party who represents himself will be held to the same standard of knowledge and practice as any qualified member of the bar. *Allen v. Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903. The reasonable considerations we afford to pro se litigants do not include attempting to redress the ongoing consequences of the party's decision to function in a capacity for which he is not trained. *See id.*; *see also Jacob v. Cross*, 2012 UT App 190, ¶ 4, 283 P.3d 539 (per curiam).

delay; rather, he admitted that the delay had been caused by his original counsel's withdrawal. Neither did he argue that Defendants had previously sought extensions. And although Robinson did designate an expert, it does not appear that he provided a report from that expert at any point, let alone before the district court ruled on his rule 56(f) motion. Finally, there is no indication that Robinson relied on erroneous information from the district court about the status of his motion.

¶17    Moreover, in *Welsh*, the district court's decision was partly a sanction under rule 37 of the Utah Rules of Civil Procedure, after the court found that the plaintiffs' "failure to comply with the discovery order was willful." *Welsh v. Hospital Corp. of Utah*, 2010 UT App 171, ¶ 8, 235 P.3d 791. But here, it does not appear that the denial of Robinson's rule 56(f) motion was a rule 37 sanction. Robinson does not address whether the discretion afforded a district court in imposing rule 37 sanctions is similar to the discretion afforded a district court in ruling on a rule 56(f) motion seeking to extend a deadline.

¶18    The Utah Supreme Court has stated that appellate courts "will not reverse the district court's decision to grant or deny a rule 56(f) motion for discovery unless it exceeds the limits of reasonability." *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 20, 192 P.3d 858 (citation and internal quotation marks omitted). There is no bright line test to ascertain whether a court has crossed that limit. *Id.* ¶ 21. Some of the relevant factors are consideration of (1) the rule 56(f) affidavit "to determine whether the discovery sought will uncover disputed material facts" or "if the party requesting discovery is simply on a fishing expedition," (2) "whether the party opposing the summary judgment motion has had adequate time to conduct discovery and has been conscientious in pursuing such discovery," and (3) "the diligence of the party moving for summary judgment in responding to the discovery requests provided by the party

opposing summary judgment."[4] *Id.* (internal quotation marks omitted).

¶19   "Parties . . . cannot justify further discovery without providing a viable theory as to the nature of the facts they wish to obtain." *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 57, 70 P.3d 1 (citation and internal quotation marks omitted). A district court may refuse further discovery where the plaintiff "fail[s] to explain in his affidavit how additional discovery would aid his opposition to summary judgment." *Riddle v. Celebrity Cruises, Inc.*, 2004 UT App 487, ¶ 17, 105 P.3d 970 (ellipsis, citation, and internal quotation marks omitted).

¶20   Here, Robinson's rule 56(f) affidavits and supporting memoranda did not explain what facts would likely be uncovered by further discovery. Rather, the documents asserted that Robinson "produced documentary evidence of the missteps of Bean, and wishes to depose her on the subject" and that Robinson "anticipate[d] her responses will give me the information to better oppose a summary judgment motion." Similarly, the affidavits asserted that "[t]he deposition of Clark is also needed to see if he is satisfied with the way Bean followed his advice." And with regard to Robinson's expert, the memoranda simply stated that Robinson "has also secured an expert . . . and believes that Defendants will likely want to depose him."

¶21   Furthermore, the affidavits did not address "whether the party opposing the summary judgment motion has had adequate time to conduct discovery and has been conscientious in pursuing such discovery." *Overstock.com*, 2008 UT 55, ¶ 21. Robinson filed the case on October 31, 2011, and retained

---

4. Robinson does not claim that Defendants caused the delays necessitating his rule 56(f) motion.

counsel in February 2012. The discovery scheduling order was entered on January 2, 2013. Robinson was represented by counsel until April 8, 2013, but unrepresented from that date until August 12, 2013.[5] Robinson's affidavits did not explain why the time leading up to April 8, 2013, was inadequate to conduct discovery, nor did the affidavits establish that Robinson or his previous counsel were conscientious in the pursuit of the discovery during that time.

¶22　It is true that a district court's discretion, although expansive, is not unlimited. *Welsh v. Hospital Corp. of Utah*, 2010 UT App 171, ¶ 19, 235 P.3d 791. But we cannot agree with Robinson that the court here "clearly abused its discretion" on the basis of the tenuous similarities he sees between his case and *Welsh* and *Shaw*.[6] Nor does it appear that the district court's denial of Robinson's rule 56(f) motion exceeded the limits of reasonability. *See Overstock.com*, 2008 UT 55, ¶¶ 20–21. We conclude that Robinson has not shown an abuse of discretion in the district court's denial of his motion.

---

5. Robinson is once again unrepresented in this matter and pursues this appeal pro se.

6. Robinson also relies on an unpublished federal case from the First Circuit Court of Appeals, *Abrami v. Town of Amherst*, which he suggests addresses "'excusable neglect' in the context of a Rule 60(b) motion to set aside a summary judgment." Robinson does not provide a copy of that case, nor is it available on the First Circuit's website or via Westlaw. In any event, Robinson does not even attempt to explain why the federal circuit court's view of excusable neglect under Federal Rule of Civil Procedure 60(b) should inform our review of a Utah state court's consideration of rule 56(f) of the Utah Rules of Civil Procedure.

### II. The District Court Did Not Err by Granting Defendants' Motion for Summary Judgment.

¶23    Robinson also contends that the district court erred in granting summary judgment to Defendants. He argues that he alleged "all the elements of a malpractice claim" and that summary judgment was therefore inappropriate.

¶24    "A court may grant summary judgment only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Kranendonk v. Gregory & Swapp, PLLC*, 2014 UT App 36, ¶ 11, 320 P.3d 689 (quoting Utah R. Civ. P. 56(c)). "In a legal malpractice action, a plaintiff must plead and prove (i) an attorney–client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages." *Id.* ¶ 12 (quoting *Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996)).

¶25    Here, after Defendants filed their motion for summary judgment, Robinson failed to timely respond to it.[7] The district court then granted the summary judgment motion, concluding that Robinson had not properly filed any affidavits or other evidence that raised an issue of disputed material fact. The court

---

7. Robinson asserts that "courts must examine the entire record submitted to determine whether there are any issues of fact." However, an "assertion that a trial court has an independent duty to ferret out opposing facts in prior pleadings in the record when a party fails to respond to a summary judgment motion is contrary to the rules." *In re Estate of Kuhn*, 2008 UT App 400U, para. 8 (per curiam).

concluded that absent an expert witness, Robinson could not demonstrate that Defendants' legal representation fell below the applicable standard of care. And the court ruled that the evidence presented by Defendants demonstrated that Robinson could not show that any alleged breach by Defendants caused any loss to him.

¶26    Robinson argues that "[i]t is not always necessary for an expert witness to opine about the standard of care." This is true. *See, e.g.*, *Nixdorf v. Hicken*, 612 P.2d 348, 352 (Utah 1980) (holding that no expert was required to establish the standard of care appropriate to the loss of a surgical instrument inside a patient during surgery). But it does not follow that an expert witness is never necessary to opine about the standard of care. Rather, no expert is required to testify as to the contours of the standard of care so long as the standard of care is "within the common knowledge and experience of [a layperson]." *See id.* Here, the appropriate standard of care was not clear cut. The underlying divorce case involved premarital real property holdings, sophisticated parties, marital property valued in millions of dollars, and a complex web of business transactions including leaseholds, building management expenses, out-of-state real property holdings, and like-kind exchanges under section 1031 of the United States Internal Revenue Code. We cannot fault the district court's determination that an expert was necessary to explain the standard of care required of an attorney representing one of the divorcing parties in this complicated and contentious situation. Nor can we see error in the district court's resulting conclusion that "[w]ithout an expert witness, [Robinson] cannot demonstrate that [Defendants'] representation of him in his divorce action fell below the applicable standard of care."

¶27    Robinson also challenges the district court's conclusion that Robinson could not show that any alleged breach by Defendants caused any loss to him. He argues that, if Defendants had advised him to include language in the

Stipulation governing what was to happen in the event he was unable to refinance Phoenix Plaza, he would have done so and therefore would not have suffered the consequences of failing to comply with the Stipulation's requirement that he refinance Phoenix Plaza. However, Robinson did not file an application for a refinance within the required fifteen days after the date of the Stipulation, nor did he do so at any time thereafter. The absence of language addressing an unforeseen inability to refinance could not have harmed Robinson when he put forward no evidence that he was actually unable to refinance. Indeed, Defendants submitted evidence suggesting that Robinson did not file the application for refinance despite Defendants' urging him to do so, because he was awaiting a better interest rate or hoping to avoid what he viewed as a futile refinance application. In any event, it was not the district court's role to construct a potential argument for Robinson based upon the record facts after he failed to timely respond to the summary judgment motion.

¶28 Moreover, Robinson's challenges to the summary judgment ruling are unpreserved. Although a pro se litigant should be accorded every consideration that may reasonably be indulged, we will ultimately hold him to the same standard of knowledge and practice as any qualified member of the bar. *Allen v. Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903; *see also Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 3 & n.2, 241 P.3d 375 (according the pro se litigant several indulgences such as overlooking the fact that the briefs "lack[ed] focus and coherence and [were] littered with unsupported factual allegations"). "The preservation requirement is based on the premise that, in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it." *Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 3, 330 P.3d 762 (citation and internal quotation marks omitted). "Consequently, issues that are not raised at trial are usually deemed waived." *Id.* (brackets, citation, and internal quotation

marks omitted). Due in part to his failure to timely respond to the motion for summary judgment, Robinson did not present to the district court the arguments he now raises on appeal. Because Robinson did not present his claims of error to the district court in such a way that the court could rule on them, they are not preserved. Because the challenges are unpreserved, we deem them waived. *Id.*

## CONCLUSION

¶29     We affirm both the district court's denial of Robinson's rule 56(f) motion and the district court's grant of Defendants' motion for summary judgment.

————————